STATE OF IOWA, appellee, v. JOHN BRANT, appellant.

No. 52288.

(Reported in 150 N.W.2d 621)

May 2, 1967.

Anthony M. Critelli, of Des Moines, for appellant.

Richard C. Turner, Attorney General, Stephen C. Robinson, Assistant Attorney General, and Ray A. Fenton, of Des Moines, County Attorney, for appellee.

Mason, J.—Defendant John Brant was charged by indictment with robbery with aggravation contrary to sections 711.1 and 711.2, Code, 1966. He entered a plea of not guilty. Trial to a Polk County jury resulted in a verdict of guilty. Defendant's motion for new trial was overruled and he was sentenced to imprisonment in the state penitentiary at Fort Madison not to exceed 25 years.

From this final judgment defendant appeals, assigning as error the trial court's overruling his motion to suppress certain evidence and in permitting it to be admitted for the jury's consideration.

April 13, 1966, Geisler's Maid-Rite, 621 Locust Street, Des Moines, was robbed by an armed assailant of $52.80. Indictment was returned May 12 and defendant filed his motion to suppress before trial.

I.  Defendant alleged in this motion that his sport coat, topcoat and a 38-caliber revolver were taken from him by police officers April 14 in violation of his rights under Amendment 4 to the Federal Constitution; the police officers when taking the property were not possessed of a search warrant; had ample time and opportunity to obtain one and in failing to do so rendered the taking of the property unconstitutional; defendant was not under arrest at the time the articles were taken from him although he was later taken into custody.

After the State filed its resistance, a hearing was held. The testimony of Frank Weideman and Frank Punelli, Des Moines detectives, was offered by the State. Defendant testified in his own behalf.

At this initial hearing Weideman testified he was assigned to investigate the Maid-Rite incident and after talking to Clarence Drake, the manager, a composite picture of the assailant was obtained; after showing the picture to some people he found whom it might be. Accompanied by Punelli he went to the Franklin Hotel and was advised John Brant had room 410. They went to the designated room, knocked at the door and were met by a man. The officers identified themselves to this man who said his name was John Brant and agreed to talk to them in his room. They advised defendant they were investigating an alleged robbery and asked if he would come to the police station with them. Brant said he would and when asked if he wanted to put on his coat, he said "yes." Punelli handed him his sport coat which was lying on a chair. The officer testified defendant also wanted his topcoat which was on a hall tree across the room and officer Punelli gave it to him.

Weideman testified he had previously received a description of the coat and topcoat the assailant wore the night of April 13 and these fit the description. He observed Punelli remove a 38-caliber revolver from the topcoat.

After Punelli produced the gun, Weideman told Brant he was under arrest but did not specifically state the charge. The incident in the hotel took place about 3 p.m. and defendant was charged with the crime under indictment at approximately 4 p.m. that day.

Detective Punelli testified he was assigned with Weideman to investigate the Maid-Rite incident, went to room 410 in the Franklin Hotel, was met at the door by defendant, they identified themselves as police officers and when Weideman asked if they could come in, Brant said "yes." Defendant was advised of the officers' purpose in coming to his room. Brant asked, "What restaurant?" He was told "the Maid-Rite on Locust." Punelli corroborated Weideman's testimony about asking Brant if he wanted his sport coat which was hanging on a chair and

Brant's reply "yes." He testified Weideman asked Brant if he wanted his topcoat which was on a rack or pole and Brant said "Yes."

Punelli testified he went over, picked up the coat and felt a weight, looked down and saw the butt of a revolver sticking out of the inside pocket. The officer removed the gun and found it loaded with four shells.

As Punelli held the gun Weideman told Brant he was under arrest. Just before Punelli took the gun from the coat pocket Brant stated, "I guess that's it" or "that's all." He had not yet been advised by either officer that he was under arrest.

On cross-examination Punelli testified he did not shake the coat down and did not actually see the gun until he picked the coat up and felt its weight.

The officers did not have a search warrant.

Defendant testified when the officers came to his hotel room and asked if he would go to the restaurant, he told them "no." Asked if he wanted to wear a coat, he said "yes" and when asked, "Which one?", answered "my sport coat."

He further testified "Weideman asked if I wanted to wear my topcoat and I said 'no.' At this time Punelli was going around the bed and toward the coat rack. He picked up my topcoat off of the rack and that's when he found the gun in the pocket. He did not ask to take my topcoat; [I] did not authorize anyone to get that coat."

Following the hearing the court overruled defendant's motion.

At the trial defendant renewed his objections to the offer of the evidence involved and they were overruled.

██ II. Defendant adopted a correct procedure for questioning the admissibility of the articles into evidence by filing and securing a hearing on this motion prior to trial.

██ The trial court overruled the motion as to each ground and in its entirety by making a calendar entry. Perhaps such entry is sufficient here but it is suggested that a trial court who conducts such initial hearings where the validity of a search or the admissibility of evidence is involved might well support his ruling by findings of fact and conclusions of law, as suggested

in State ex rel. Goodchild v. Burke, 27 Wis.2d 244, 133 N.W.2d 753, 764. Such procedure may prove quite helpful.

III. Defendant contends that generally searches are proper under two circumstances: (1) when made under the authority of a validly-issued search warrant, and (2) when incident to a lawful arrest. When made without a warrant, searches must be based on necessity and in this situation will be permitted when officers are (a) protecting themselves, (b) depriving the prisoner of a means of escape, or (c) avoiding the destruction of evidence.

It is admitted the officers in this case had no search warrant. Applying the necessity principle, defendant argues the State cannot successfully maintain under the circumstances here that the officers took the coat to protect themselves, the revolver being in the inside coat pocket on a rack on the opposite side of the room; or they were taking a means of escape from defendant by blocking the door; or were preventing the destruction of evidence, the topcoat and revolver.

Defendant strongly urges that the officers' purpose in entering his hotel room was to search rather than arrest since the arrest was made after the property was discovered; the officers had plenty of time to obtain a search warrant and no special circumstance or necessity existed to relieve them from securing one; therefore, the search was illegal, defendant's constitutional rights were violated, the court erred in overruling his motion to suppress and defendant is entitled to a reversal.

Defendant also contends the search was not incident to a lawful arrest; the officers could have immediately arrested him, taken him to the restaurant for identification (their express reason for being in his hotel room in the first place) and then arrested him if identification was accomplished. In any event, they would then have been in a position to search his room.

Although we agree with defendant's contention that generally searches and seizures are proper under the two circumstances urged in this division, attention is called to those searches and seizures made with voluntary consent. These constitute another exception to the rule that search and seizure must rest on a search warrant. State v. Raymond, 258 Iowa 1339, 142 N.W. 2d 444, 447; State v. Polton, 259 Iowa 435, 143 N.W.2d 307, 311,

and citations; Stoner v. State of California, 376 U. S. 483, 486, 84 S. Ct. 889, 891, 11 L. Ed.2d 856.

The purpose of Amendment 4 is not to prevent all searches—it prevents only unreasonable searches and seizures. State v. Hagen, 258 Iowa 196, 137 N.W.2d 895, 899; State v. Polton, supra.

IV. Whether it might be determined that the situation here constituted a search incident to arrest or with defendant's voluntary consent is immaterial. There was no search in the constitutional sense under the circumstances here. That which is in plain view is not the product of a search. United States v. Barone (1964), 2 Cir., N. Y., 330 F.2d 543, 544, and citations. The Barone case illustrates the rule that if peace officers are lawfully admitted to private premises, what they see once they are in, that is, what is in plain view, is not a search. See also State v. Polton, supra, and citations.

From the evidence at this initial hearing the trial court was entitled to conclude the detectives were admitted to defendant's room by his invitation. There was no evidence the officers in any way entered the room by breaking or "barging in" or so much as impliedly forcing their way into defendant's room. It was not unlawful for the officers to do as the testimony here showed: they knocked at the door and when opened were met by a man who said his name was John Brant; they identified themselves, stated they were investigating a restaurant robbery on Locust Street and asked if they could come in for a minute and talk with him; defendant said, "yes."

Under these circumstances the officers had a right to be where they were at the time. They did not gain entrance to defendant's room through any ruse. While the right of officers to thrust themselves into a home is of grave concern, Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436, here there was no evidence of thrusting. This was an entirely peaceful and invited entry with no search or intent to search in the minds of the officers upon entry. However, once legally inside the room, they were not required to remain blind to the obvious. It was not a search to see that which was readily observable. The revolver was in plain sight when the officer

picked up defendant's topcoat at his request. See United States v. Barone, supra; Davis v. United States (1964), 9 Cir., Cal., 327 F.2d 301, 305. State v. Polton, supra, also supports this position.

If, without a search warrant and without an unlawful entry into the premises, a weapon or implement of the type used in the crime being investigated by the officers is seen in the premises, they are not required to close their eyes and need not walk out and leave the articles where they saw them. Davis v. United States, supra.

V. Defendant's testimony at the hearing contradicts the detectives' particularly as to the events happening after their entry into the room. It is the fact finder's function, not ours, to decide disputed fact questions.

For purposes of review where there is a claim of denial of constitutional rights, ordinarily we will accept and give effect to the trial court's determination of conflicts in evidence as to the occurrence or nonoccurrence of factual events and happenings, because of his closeness to the trial scene where there is afforded the best opportunity to evaluate contradictory testimony, and to place his reliance on those whom he believes to have been telling the truth. See in this connection State v. Gates, 260 Iowa 772, 150 N.W.2d 617. It is evident from the trial court's ruling that the contradiction was resolved against defendant.

With any contradiction thus decided, we determine that the seizure of the revolver was not unreasonable, defendant's constitutional rights were not violated and the court's dismissal of defendant's motion to suppress is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.