STATE OF IOWA, appellee, v. LOUIS GATES, appellant.

No. 52394.

(Reported in 150 N.W.2d 617)

May 2, 1967.

Patrick J. Life, of Oskaloosa, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Lake E. Crookham, Mahaska County Attorney, for appellee.

Moore, J.—This appeal, following defendant's conviction and sentence on charge of forgery and uttering a forged instrument, turns on whether the trial court was justified in (1) denying his motion to suppress evidence seized during an alleged illegal search and (2) denying his application to take depositions of the four witnesses listed on the county attorney's information.

I. On March 30, 1966, pursuant to assignment, trial on the two count county attorney's information commenced. By agreement of counsel, defendant's motion to suppress evidence was submitted to the trial court out of the jury's presence. Defendant alleged the search and seizure of a canned ham from the trunk of his automobile was illegal and in violation of his rights guaranteed by Amendment 4 to the Constitution of the United States. Testimony of Sheriff Tharp and defendant was taken surrounding the search and the seizure of the canned ham which the State claimed was purchased at the time defendant forged and uttered a check at a supermarket in Oskaloosa.

The trial court overruled the motion to suppress. His findings include a specific finding defendant had consented to

the search. On trial Sheriff Tharp related the events leading to finding the ham in the trunk of defendant's automobile the next day after defendant's arrest on a warrant. The manager of the supermarket, where the check involved was endorsed and cashed, identified defendant and testified the ham had been purchased at the store. It was received as an exhibit. It was offered as additional proof defendant was in the store. If the search was illegal the exhibit was not admissible at the trial following overruling of defendant's motion to suppress. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933.

■ II. It is well settled the constitutional guarantee prohibiting unreasonable searches and seizures may be waived by consent. Foley v. Utterback, 196 Iowa 956, 958, 195 N.W. 721, 722; State v. Post, 255 Iowa 573, 581, 123 N.W.2d 11, 16; State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, 714; Zap v. United States, 328 U. S. 624, 628, 66 S. Ct. 1277, 1279, 90 L. Ed. 1477, 1482.

■ III. There was no illegal search and seizure of property found in defendant's automobile if defendant freely and intelligently gave his consent to the search. Robinson v. United States, 5 Cir., 325 F.2d 880, 884 (defendant then under arrest); Burge v. United States, 8 Cir., 332 F.2d 171, 173, and citations; Weed v. United States, 10 Cir., 340 F.2d 827, 829; Commonwealth v. Anderson, 208 Pa. Super. 323, 222 A.2d 495, 499.

The facts in Tanner v. State, 114 Ga. App. 35, 150 S.E.2d 189, are much like those in the case at bar. After lawful arrest defendant gave officers permission to examine his automobile more closely. They had previously made some search of it. On closer examination the fruits of a burglary were found as well as a 38-caliber pistol. The Georgia court held these articles admissible although no search warrant had been obtained.

■ IV. The burden of demonstrating evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence. However, where the government relies upon consent to an otherwise illegal search and seizure, it has the burden of proving by clear and convincing evidence the consent was voluntary and free from duress and

coercion. State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, 714, 715, and citations.

V. Whether consent has been given freely and intelligently in a particular case is a factual matter to be determined in the first instance by the trial court and where the evidence is factually in conflict this court will accept the finding below if it is supported by substantial evidence. State v. Shephard, supra; Ker v. California, 374 U. S. 23, 33, 83 S. Ct. 1623, 10 L. Ed.2d 726, 738; United States v. Page, 9 Cir., 302 F.2d 81, 83; Burge v. United States, 8 Cir., 332 F.2d 171, 173; People v. Peterson, 17 Ill.2d 513, 162 N.E.2d 380, 381. In this connection see State v. Brant, 260 Iowa 758, 150 N.W.2d 621.

In the last analysis, the question of the validity of the search and seizure here involved must be determined by reference to whether it was reasonable or unreasonable in light of the surrounding facts and circumstances. Precedents are of little value. State v. Shephard, Ker v. California and Commonwealth v. Anderson, all supra. In United States v. Rabinowitz, 339 U. S. 56, 63, 70 S. Ct. 430, 434, 94 L. Ed. 653, 659, the court said: "What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

We proceed therefore to an examination of the record in the case at bar.

VI. Walter Tharp, Mahaska County sheriff, testified he went to the Wapello County jail at Ottumwa at approximately 7:30 p.m. January 8, 1966, and served defendant with a warrant issued in Oskaloosa, Mahaska County, by a Justice of the Peace. Defendant had apparently been arrested by Ottumwa police on an alarm from Oskaloosa describing defendant and his white 1959 Cadillac. Upon searching defendant's person Tharp found $616, in one, five, ten and twenty dollar denominations in defendant's socks. After fingerprinting and photographing defendant was taken to his car at the Ottumwa police station where it was

searched and nothing found. The car trunk was not searched at that time.

Defendant was then taken to Oskaloosa and arraigned before a Justice of the Peace. He there made phone calls including one to his home. He was then incarcerated in the Mahaska County jail. The next morning, Sunday, January 9, 1966, defendant's automobile at his request was moved from Ottumwa and parked back of the Mahaska County jail. Shortly after noon that day defendant was taken to his car by the sheriff where there was a conversation concerning search of the trunk.

Sheriff Tharp's testimony on the motion to suppress includes:

"Q. Please state what those conversations were as you best recall? A. I asked him about searching his trunk of his car if we got a key that would open it. He had no objections.

"Q. In other words, he said you could search the vehicle? A. That's right.

"Q. Was this before you obtained the can of meat and the two quarts of anti-freeze? A. Yes, it was. * * *

"Q. Did you advise the defendant at that time that he need not permit you to make a search of his vehicle? A. I did.

"Q. Yet he consented if you could find a key, is that right? A. He consented. He was out there when we searched it.

"Q. He was present when the search was made? A. He was present when it was searched.

"Q. At the time you were opening the trunk of the vehicle, did the defendant make any statements or objections to your actions at that time? A. No, he didn't."

None of the keys found in defendant's possession would unlock the trunk. The sheriff then went to a key maker for a local automobile dealer and procured a key. The sheriff and defendant, in handcuffs, then returned to defendant's automobile where the sheriff again asked defendant if he could search the trunk.

Defendant testified he had said that since he· was under arrest, there was not much he could do to stop it and further stated he had made no objections to the sheriff opening the trunk and taking the ham and the two quarts of antifreeze therefrom.

Defendant also testified the sheriff had advised him the car would be searched whether he consented or not, if necessary he would get authority to search it and if defendant objected it would not make any difference. The sheriff denied making any such statement.

The matter of probative weight between the conflicting testimony of the sheriff and defendant turns on the question of their respective credibility which was for the trial court. The sheriff could have easily obtained a search warrant if he had not obtained the free and intelligent consent of defendant. The record discloses substantial evidence to support the finding of consent by the trial court.

United States v. Page, supra, 9 Cir., 302 F.2d 81, 84, states: "Many decisions of the other Courts of Appeals sustain the trial court's finding that there was consent to a search, even though the consent was obtained under authority of the badge, or while defendant was under arrest."

Having consented to the search without a warrant, the protection of Amendment 4 was lost to defendant. His first assignment of error does not entitle him to a reversal.

VII. On February 5, 1966, defendant filed the following application:

"Comes now the defendant, Louis Gates, and requests taking regular depositions of the following named persons as provided by section 781.10 of the 1962 Code of Iowa: 1. Walter A. Tharp —2. Bill Hoffman—3. Dwight Groves—4. Francis Carlson.

"Wherefore, applicant prays that this matter be set down for hearing and that upon hearing the defendant be granted permission to take regular depositions of the above named individuals."

The four men named in defendant's application were listed as State's witnesses on the county attorney's information under which defendant was charged. The address of each was included in the minutes attached to the information.

Tharp, as we have pointed out, was the Mahaska County sheriff. Hoffman, a resident of Ottumwa, was listed as a witness to events in Ottumwa at the time of defendant's original arrest.

Groves, a resident of Oskaloosa, was listed as identifying defendant when he entered and left the supermarket where the check was cashed. Carlson, the manager of the supermarket at Oskaloosa, had seen defendant endórse another's name to the check and had given him cash therefor.

Defendant contends the trial court erred in making the following order:

"On this 8th day of February, 1966, defendant's 'Application' (being application to take deposition) filed herein on February 5, 1966, was presented to the Court, with the State appearing by Lake E. Crookham, County Attorney for Mahaska County, Iowa, and the defendant appearing in person and by his attorney, Patrick Life.

"Upon due consideration of said Application, the Court finds that the said 'Application' seeks to take the deposition of the State's witnesses endorsed upon the County Attorney's Information the minutes of whose testimony are attached thereto; that no 'Bill of Particulars' has been filed nor does it appear that the purpose of the taking of said depositions is other than for discovery purposes.

"It is therefore the order of the court that said 'Application' be and the same is hereby denied.

"(See State v. District Court of Iowa, 253 Iowa 903.)"

This is the extent of the record submitted to us on defendant's second assignment of error. What, if any, record was made on submission of defendant's application to the trial court is not disclosed to us. We conclude from the court's order defendant failed to establish any ground for taking general depositions and the only purpose was to take discovery depositions.

In State v. District Court (Delaware County) 253 Iowa 903, 114 N.W.2d 317, we analyze the provisions of Code section 781.10 and the Rules of Civil Procedure. We there hold section 781.10 gives a defendant a right to take the deposition of a witness who will be unavailable at trial time on notice or commission in the same manner as in civil cases but that it does not make the Rules of Civil Procedure governing discovery depositions applicable to criminal cases. We there hold discovery rules are confined to civil cases.

In State v. District Court, supra, we state: "Historically, section 781.10 and its predecessors were enacted for the purpose of giving the defendant an opportunity to obtain and offer evidence in his own behalf when the witnesses might not be otherwise available." (Pages 910, 911, 253 Iowa, page 321, 114 N.W. 2d)

In State v. McClain, 256 Iowa 175, 181, 125 N.W.2d 764, 767, 768, 4 A. L. R.3d 134, 142, we follow State v. District Court, supra, and say: "Before trial defendant had the names of the State's witnesses and the substance of their testimony. If defendant's information as to the substance of the State's evidence was inadequate a motion for a bill of particulars would have been in order. He was confronted by the witnesses against him and had the right to cross-examine."

Defendant here was in the same situation. Defendant's second assigned error is without merit.

We have examined the whole record, including the clerk's transcript. We find no reversible error.—Affirmed.

All JUSTICES concur except RAWLINGS and BECKER, JJ., who dissent, and THORNTON, J., not sitting.