STATE of Iowa, Appellee,

v.

Raymond DuWayne PETERSON, Appellant.

No. 52591.

Supreme Court of Iowa.

Jan. 9, 1968.

James F. Fowler, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., Ray A. Fenton, County Atty., and Vincent M. Hanrahan, Asst. County Atty., for appellee.

LARSON, Justice.

■ The defendant Raymond DuWayne Peterson was convicted of the crime of breaking and entering a tavern in Des Moines, Iowa, known as Peggy's Lounge, contrary to the provisions of section 708.8 of the 1966 Code. He has appealed and assigns as error (1) the court's denial of his written motion to suppress evidence, to reconsider, for a mistrial, and for a new trial, because the evidence used against him was obtained by illegal and unreasonable search and seizure, (2) the overruling of defendant's objections to testimony and exhibits used against him, because they were obtained by illegal search and seizure, (3) the refusal of the court to give defendant's requested instructions and the overruling of his objections to the instructions given, and (4) the admittance over defendant's objections of statements and admissions made by him to the arresting officer when the officer had not fully advised him of his constitutional rights. Assignments 3 and 4 are not argued and are deemed waived. State v. Mead, 237 Iowa 475, 22 N.W.2d 222. In any event, we find no merit in any of these contentions and affirm the trial court's judgment sentencing defendant to the State Penitentiary for a term of not to exceed ten years. The facts will be stated as they become pertinent.

I. Prior to trial defendant filed a motion to suppress evidence, including statements obtained from him as a result of an entry to an apartment where he was found, his arrest, the seizure of certain items of property found on him, and the extent of the officer's advice as to defendant's constitutional rights, for the reasons that (1) the officer's entry into an apartment occupied by defendant was unlawful and unreasonable, (2) the arrest was unlawful, (3) the seizure of defendant and certain items found in the apartment were unlawful and unreasonable, and (4) damaging statements were elicited from him by the arresting officer without first advising him of his constitutional rights or allowing him the opportunity to exercise them.

■■ A hearing on this motion was had and the trial court overruled the motion. Thereafter defendant's motion to reconsider the ruling was also considered and rejected. Defendant correctly maintains that evidence obtained during an illegal search is not admissible at the time of trial, particularly where a timely motion to suppress the evidence has been filed. He cites Amendments 4 and 14 to the United States Constitution, and Article I, Section 8, of the Iowa Constitution; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; State v. Post, 255 Iowa 573, 123 N.W.2d 11; and several other federal and Iowa cases. We have considered these cases and their basic holdings, i. e., that the due process clause of Amendment 14 precludes the admission of unconstitutionally-seized evidence in a State proceeding. See State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712. Also see 49 Iowa L.Rev. 14. However, we have also held, if there is a search, that an accused may waive the protection afforded by the constitutions and may freely consent to a search which might otherwise be illegal. State v. Post, supra; Foley v. Utterback, 196 Iowa 956, 195 N.W. 721.

■ The State contends under the facts disclosed in this case there was no search, legal or otherwise, but if there was a search, permission for the search was freely and voluntarily given. We agree and hold this record reveals no search was made at the apartment where defendant was placed under arrest.

II. At the hearing on the motion to suppress it appears Mrs. Sample, a tenant on the lower floor of an apartment building,

heard an unusual noise coming from the adjoining furnace room about 1:30 P.M. on Sunday, December 4, 1966. She thought it was the landlord working on the furnace, and a short time later when she opened her door to the furnace room to talk with him, she observed the defendant standing at the rear door leading into Peggy's Lounge. It appeared he was trying to put the door back together. The defendant first looked at Mrs. Sample and then ran up a stairway leading to apartments on the floor above. There was no other exit available to him. Mrs. Sample observed that defendant was wearing a dark hat and brown suede jacket. Her suspicions being aroused, she examined the front door of the Lounge and found it locked. She then advised the landlord and together they examined the furnace room, determined a break-in had occurred, and called the police. Officer Gillespie, in uniform, arrived about 2:40 P.M., saw that the rear door to the tavern had been pried open, that beer containers were lying around on the floor, that the cash register drawer was open, and concluded there had been a breaking and entering of the premises.

Upon being advised of Mrs. Sample's observations, the officer, the landlord, and Mrs. Sample, ascended the stairs to the floor above and, hearing voices in Apartment 5, the officer knocked on the door. He said nothing until the door was opened by a man, later identified as a neighboring tenant. The officer asked if he could come in, was told "Yes, come right in", and he did, followed by Mrs. Sample and the landlord. In the apartment they observed three men and many empty cans of beer on the floor. Defendant was sitting or lying on the bed, and his hat and jacket were on a chair or stand nearby. Mrs. Sample immediately identified him as the person she had seen running from the rear door of the tavern and pointed out the hat and jacket he had been wearing. Officer Gillespie said he then advised defendant of his constitutional rights to an attorney and that anything he said could be used against

him, and placed him under arrest for the Lounge break-in. Thereafter, the defendant first denied that he knew anything about the tavern entry and asked "What break-in?" When advised that it was the Lounge downstairs, he said, "Well, I might as well admit it, you have got me." While no search of defendant was made at that time, the officer took him and his hat and jacket to the police station.

It appears that the person who leased Apartment 5, Mr. Ayers, had gone on an errand and intended to be back shortly, that he had told his three guests "he would be right back, stick around". It also appears no one in particular was left in charge, although defendant had been an overnight guest. In any event, when the officer asked to come in, no one including defendant voiced any objections to his entry. No force or deceit was used to gain admission to this apartment, and the trial court found there was no evidence of an illegal entry. Clearly then, unless the entry was unlawful, the defendant's arrest was lawful. The officer was aware that a crime had been committed and the suspect had been pointed out to him. State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, 447; State v. Brant, Iowa, 150 N.W.2d 621.

 III. It is reasonable to believe that when guests are left in charge of one's private premises, they possess the authority to grant or deny admission thereto to visitors. It must be remembered that the request here was for admission only, not for a right to search. This is a vital distinction. A granted request for admission is not the same as leave to search one's private premises. We would hesitate to say these guests could authorize a search of the Ayers apartment, but that was not the request, nor was any effort made to conduct a search. No complaint was made by Ayers, who would be the proper party to complain if a search of his premises had been made. We are satisfied the officer, the landlord, and Mrs. Sample, were not

illegally upon the private premises where defendant was seen.

■ It is well settled that when peace officers are lawfully admitted to private premises, what they see once they are in, that is, what is in plain view, is not a search. United States v. Barone (1964), 2 Cir., N.Y., 330 F.2d 543, 544, and citations; State v. Brant, supra; State v. Polton, 259 Iowa 435, 143 N.W.2d 307, and citations. We find no better statement as to our view here than that found in the Brant case. There we said: "Whether it might be determined that the situation here constituted a search incident to arrest or with defendant's voluntary consent is immaterial. There was no search in the constitutional sense under the circumstances here." There the officer's entrance into the hotel room of the suspect was permitted and, as here, the articles connecting the defendant with the crime were in plain view.

We find no merit in appellant's contention that a search warrant was necessary under these circumstances. The officer here was merely conducting an investigation of the Lounge break-in and information as to the flight of a suspect. He had no probable cause to believe the suspect was then in that apartment.

■ The only evidence of a search found in this record refers to the taking of certain items at the police station. In this regard attention is called to well-recognized exceptions to the rule requiring a warrant, i. e., those searches and seizures made with voluntary consent and when made incident to a lawful arrest. See State v. Raymond, supra; State v. Polton, supra; State v. Shephard, supra. No complaint is made as to that search, and only the properly-identified hat, coat, and dollar bill found in the jacket, were admitted for jury consideration.

In State v. Polton, supra, 259 Iowa 435, 143 N.W.2d 307, 309, we held the evidence obtained when boy-invitees in the suspect's apartment admitted officers who then legally arrested the suspect, was not rendered in-admissible by the manner of their admission to the apartment. In considering similar constitutional contentions on appeal, we had this to say: "Without stopping to consider now whether there was any search here we think the vital question in the case is whether the arrest of defendant without a warrant was legal. If so there was no violation of the constitutional provisions he invokes. Defendant admits a search may be made without a warrant therefor if it is incidental to a legal arrest. State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, 447, so holds. We are clear the arrest was pursuant to statutory authority and entirely legal." Consideration there was given the authority relied on in the case at bar and need not be repeated here.

In State v. Brant, supra, Iowa, 150 N.W. 2d 621, we fully considered the contentions advanced herein as they relate to Amendment 4 of the United States Constitution. Although in Brant the accused granted admission to his hotel room, and the object of the officer's visit was to investigate a restaurant robbery, the discovery and taking of a coat and gun which matched the description given by the victim of the robbery was held not to be the product of an unreasonable and unlawful search and seizure.

IV. At the trial Mrs. Sample and the landlord, Mr. Goebel, testified basically the same as at the hearing on the motion to suppress, except Mrs. Sample was not able to identify the hat defendant was wearing when she first saw him. She recalled hearing the officer advise defendant at the apartment that he did not have to admit anything and that he would be charged with breaking and entering. Mr. Goebel identified the hat as the one that was lying on top of the jacket when seen and identified by Mrs. Sample in the apartment.

Pauline Taylor, the owner of Peggy's Lounge, testified that she locked both front and back doors of the tavern the morning of December 4, 1966, that she left small change, including six and a half dollars in

Kennedy half dollars, a Canadian dollar bill, a two-dollar bill, and two keys, in the cash register, that there was money in the juke box, and that the beer cooler had been filled. She further testified, after being called at 5 P.M., she checked the tavern and found the rear door torn loose, the money and keys gone from the cash register, the juke box broken into, and seventeen six-packs of beer gone from the cooler.

■ It appeared the Canadian dollar bill was similar to the one taken from the tavern cash register and had a similar tear in it. The keys were identified as the missing keys from the tavern cash register. Although defendant alleges these items were taken at the apartment after he was placed under arrest, the jury could have found they were taken from him in the booking room at the police station. In either event the seizure was proper.

At no place in this record does it appear any objection was made to the search at the police station or to the contemporaneous seizure of the items listed, including hat, jacket, and Canadian dollar bill. The trial court submitted only Exhibits 1 and 2 (the hat and jacket) and Exhibit 5 (the Canadian dollar bill) to the jury. On other grounds the court did not permit jury consideration of Exhibits 3, 4 and 6, the latter being the bag of coins and keys. We find no error in these rulings.

Although there were exceptions made to the instructions given by the court, and the court's rulings upon defendant's motions for a new trial were assigned as error, counsel did not argue them here and under the rule those assignments are deemed waived. State v. Mead, supra, 237 Iowa 475, 22 N.W.2d 222.

In addition to the assignments listed, we have examined the record for errors which would affect defendant's right to a fair trial and find no grounds for reversal. See State v. Gates, Iowa, 150 N.W.2d 617, and citations.

Affirmed.

All Justices concur.