STATE of Iowa, Appellee,

v.

Dallas Leander PROUTY, Appellant.

No. 55399.

Supreme Court of Iowa.

June 26, 1974.

Mike Wilson, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen., and Clark E. McNeal, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and HARRIS, JJ.

RAWLINGS, Justice.

Defendant, Dallas Leander Prouty, appeals from judgment on jury verdict finding him guilty of operating a motor vehicle while under the influence of an alcoholic beverage. We reverse.

December 4, 1970, at about 12:15 a. m., Iowa Falls Police discovered a steel light pole, located about one-half mile from defendant's residence, had been struck and knocked down. Officer Countryman followed a trail of dark liquid which led him to defendant's home. Prouty was there seen emerging from an automobile, the right front of which was damaged and leaking fluid. Defendant's breath smelled of alcohol, his walk was unsteady, and he balanced himself by leaning against the car. After having been given the Miranda warnings, defendant was arrested.

At the police station Prouty consulted with his attorney and thereafter refused a written request for the taking of a blood specimen. Defendant did, however, provide a urine sample.

In course of trial defense counsel ineffectively moved to suppress all testimony regarding the urine sample and ensuing laboratory analysis. This motion was predicated upon the theory that medical standard procedure requires the first urine voidance be discarded and a subsequent sample taken since the first is inaccurate for alcohol content testing purposes. In support of his motion defendant's attorney argued the introduction of laboratory analysis testimony as to a single urine specimen violated Prouty's right to a fair and impartial trial.

Chemist Susanne Kelly, a State called witness, stated she received only one urine sample. When tested it disclosed 310 mg. of alcohol per 100 mm. of urine.

Dr. Regis Weland testified it is possible to determine the blood alcohol equivalent level by a urine analysis, and described the

procedure employed. He opined a urine alcohol content of 31% by weight approximates 2.0% blood alcohol.

When the urine analysis report was offered in evidence defense counsel interposed a "not the best evidence" objection. It was overruled.

Defendant's subsequent motion to strike all testimony by Chemist Kelly and Dr. Weland was also overruled.

Over defense counsel's timely objection the jury was, in effect, told· by instruction 8 the blood alcohol content analysis report created a presumption of intoxication which could be rebutted by evidence to the contrary.

In support of a reversal Prouty contends, admission of the single urine sample analysis testimony and the giving of instruction 8 constituted reversible error.

■ I. First to be considered is the question posed regarding the urine test results.

In that regard Dr. Weland testimonially conceded a more accurate evaluation could be achieved if an individual were to first empty the bladder, wait a half hour, then give a specimen to be used in determining the blood alcohol content. Significantly, the doctor did not say a test based upon the first sample obtained would be inaccurate or lead to an erroneous chemical analysis.

Similarly, Prouty does not contend the urine test evidence was totally inaccurate. Rather, he suggests we hold it inadmissible because a second specimen would provide "better and more reliable evidence."

Assuming, arguendo, a "not the best evidence" objection is here applicable, it still remains any deficiency demonstrated by Dr. Weland's testimony went to the weight to be accorded the test result rather than its admissibility.

The only authorities cited by defendant in support of his position are: Defense of Drunk Driving Cases, Richard Erwin (Matthew Bender & Company, Inc., 1971 3rd ed.); Journal of American Medical Association, Vol. 122, No. 15, August, 1943; Attorneys Textbook of Medicine, by Louise J. Hordy, 3rd ed., 1964 Supp.; Nebraska Medical Journal, August, 1960, Vol. 45, No. 8.

Even though these articles and books may lend some aid to defendant's view it is evident Code §§ 321B.3 and 321B.4 make no provision whatsoever for the taking of a delayed urine sample such as urged by Prouty.

Furthermore, it is not for us to read such words, meaning or legislative intent into those statutes. See State v. Wedelstedt, 213 N.W.2d 652, 656 (Iowa 1973); Shelby Community Sch. Dist. v. Halverson, 261 Iowa 1329, 1338–1339, 158 N.W.2d 163 (1968); Iowa R.Civ.P. 344(f)(13).

Admittedly, the argument have voiced by defendant might be appropriately directed to the General Assembly. See State v. Wedelstedt, 213 N.W.2d at 657.

Under existing circumstances we find no basis upon which to now hold trial court erred in overruling defendant's "not the best evidence" objection.

■ II. The remaining issue presented relates to instruction 8 by which the jury was told:

"A statute of this State provides that if there is evidence that a person operating a motor vehicle upon a public highway or street, had at the time of said operation, more than ten one-hundredths of one percentum by weight in his blood, the same shall be presumptive evidence that such person was then under the influence of an alcoholic beverage.

"The rule established by the foregoing statute permits the jury to infer that the defendant was under the influence of an alcoholic beverage if it is found by the jury that at the time defendant was driving an automobile on the public highway

or street, his blood contained more than ten one-hundreths of one percentum by weight of alcohol.

"However, such inference is not conclusive, but it is rebuttable. It may be overcome or rebutted by evidence to the contrary."

Defendant unsuccessfully objected thereto at trial time and by motion for a new trial. He thereby claimed and now argues the instruction, as given, "takes away the presumption of innocence as guaranteed by the 14th Amendment and places the burden of proof on the defendant to disprove his guilt."

The precise instruction quoted above was before us and held prejudicially erroneous in State v. Hansen, 203 N.W.2d 216, 218–223 (Iowa 1972). See also State v. Sloan, 203 N.W.2d 225, 226–227 (Iowa 1972).

■ But the State contends other instructions given, placing the burden of proof on the prosecution at all trial stages, served to dissipate any error inherent in the controverted instruction.

That is neither an unique nor persuasive contention. In fact it was effectively felled by our holding in State v. Hutton, 207 N.W.2d 581 (Iowa 1973). There the same instruction as here involved included this closing admonition, 207 N.W.2d at 582–583:

"'You are instructed that despite the permissible inference from the blood test, the burden remains at all times upon the State to establish each and every element of the crime and the crime itself beyond a reasonable doubt and the burden remains at all times upon the State to go forward with the proof of all matters in issue in the case. There is no burden upon the Defendant in a criminal case.'"

We reversed, however, and in so doing aptly stated, 207 N.W.2d at 583:

"In support of affirmance the State does not ask us to reconsider our hold-

ings in *Sloan* and *Hansen*. Instead it seeks to distinguish this case on the basis of the additional final paragraph of instruction 11. Consequently, the only issue before us is whether the concededly erroneous part of instruction 11 was cured and rendered harmless by the additional final paragraph.

"We find the distinction and argument advanced by the State unpersuasive. As the dissent in *Hansen* noted,

"'Throughout the instructions the trial court put the burden on the State to prove defendant's guilt beyond a reasonable doubt.' 203 N.W.2d at 224.

"Yet, the majority in both *Hansen* and *Sloan,* after considering all the instructions as a whole, including those clearly imposing the burden on the State, held the challenged instruction was bad. The mere fact trial court in the instant case inserted a paragraph on the State's burden in the same instruction, in addition to the other instructions on burden of proof, is an insignificant distinction.

"We cannot speculate whether the jury followed the erroneous part of instruction 11 or the curative part. See Stump v. Bennett, 398 F.2d 111 (8 Cir. 1968), cert. denied, 393 U.S. 1001, 89 S. Ct. 483, 21 L.Ed.2d 466 (1968). This instructional inconsistency is indistinguishable from *Hansen* and *Sloan* in which we had no way of knowing whether the jury followed the erroneous instructions or the proper instructions on burden of proof. Including tacitly contradictory parts in the same instruction would be just as confusing to a jury as submitting the contradictory concepts in separate instructions."

See also United States v. Kenaan, 496 F.2d 181, 182 (1st Cir.) (opinion filed April 26, 1974); Carradus v. Lange, 203 N.W.2d 565, 570–571 (Iowa 1973), and citations.

It is to us apparent our holdings in *Hutton, Sloan* and *Hansen,* all *supra,* dictate a reversal in this case.

Reversed and remanded for a new trial.