**STATE of Iowa, Appellee,**

v.

**Jon Charles DAVIS, Appellant.**

**No. 57395.**

Supreme Court of Iowa.

April 16, 1975.

Brierly, McCall & Girdner, Newton, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and Kenneth L. Whitehead, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant was charged with possession of a controlled substance, marijuana, in violation of § 204.401(3), The Code. A jury trial resulted in a guilty verdict. He appeals from a judgment fining him $500. We reverse and remand for a new trial.

At about 2:00 A.M. on March 2, 1974, officer Booth of the Newton, Iowa, police department observed defendant and several other persons proceeding noisily out of an alley and into the Green Gables Apartments. He recognized one of the young men as a person who had previously been

arrested on a drug charge, but acquitted. A short time later he heard noise from one of the apartments. Booth then reported to officers Schooley and Lyman he thought a "pot party" was in progress.

Following some interrupting and unrelated calls, the three officers converged on the apartment building. It was determined the loud music was coming from an apartment at the east end of the building.

At the front of the apartment was a "bay window" consisting of three separate narrow windows. The drapes were pulled at least across the two outer windows and vision through the middle window was obscured by a shade pulled to within six to eight inches of the window sill. The defense evidence positioned a stereo and television on a ledge inside this window, approximately six inches apart.

In any event, the three policemen testified that by peering through this opening they could observe five persons, including defendant, at a dining room table in the far end of the apartment. The five were passing around and smoking a cigarette held by a clip on the end of a long silver-colored rod. The evidence disclosed this table was approximately 24 feet from the bay window. The officers asserted their view was from the apartment parking lot some six to eight feet outside the window. A defense witness who had driven by at the time testified they were "a foot or two" from the window.

Meanwhile, officer Booth questioned an early-rising milkman and a wide-awake apartment neighbor as to whether they were bothered by the noise from the apartment. No complaints were made by these persons. Officer Schooley testified loud music could be heard in the parking lot but no loud voices and no "rousing party."

After a fourth officer arrived, Booth and he were stationed at the back door of the apartment and officers Schooley and Lyman approached the front door. While Booth testified his specific intent in first approaching the apartment was to tell the occupants to keep the noise down, no officer testified what the actual intent was in going to the door after the observations through the window.

Schooley and Lyman testified they smelled the odor of marijuana through the front door and storm door before knocking. After they had knocked twice, the door was at least partially opened by Steven Snook, a co-tenant of the three-story apartment who had just come down from the second floor. Snook testified he opened the door a small distance to see who it was and the officers pushed him aside and entered the apartment. The officers claimed Snook opened the door and they went on in. No one asserted they were invited in or then asked permission to enter or search the premises.

Schooley walked through the apartment to the dining room table and picked up the cigarette holder before opening the back door for the policemen guarding that exit. As he returned to the dining room area he reached into a partially-opened drawer (Snook testified it was closed) and removed a whiskey bottle containing cigarette butts he thought were marijuana. He turned this over to officer Lyman who ordered "No more searching until we get a search warrant."

Those persons who had been seated at the table were then arrested. Subsequently a search warrant was procured and a thorough search of the premises ensued. Other property seized was never offered in evidence and does not concern us here.

■ I. Defendant argues the search and seizure which produced the marijuana-containing whiskey bottle violated the United States Constitution, Amendment 4, and the Iowa Constitution, Article I, Section 8. The issue was raised below by pre-trial motion to suppress. The error, if any, was thus preserved. State v. Untiedt, 224 N.W.2d 1, 3 (Iowa 1974).

The State asserts the warrantless search falls within the "plain view" exception, arguing that evidence in plain view of an

officer in a place where he has a right to be is admissible, is not the result of a search, and does not fall within the constitutional limitations against unreasonable searches and seizures.

The broad principles applicable in search and seizure cases are plain enough.

In State v. Osborn, 200 N.W.2d 798, 804 (Iowa 1972), we summarized the thrust of federal interpretive decisions thus,

"The basic purpose of Amendment 4 is 'to safeguard the privacy and security of individuals' rather than property. Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935; accord, Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782, 790. 'For the Fourth Amendment protects people, not places.' Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581."

The first overview courts employ to determine whether a search and seizure is unreasonable is whether the thing done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. State v. Hagen, 258 Iowa 196, 204, 137 N.W.2d 895, 899 (1965), and citations; see State v. Taylor, 260 Iowa 634, 642, 144 N.W.2d 289, 294 (1966). The problems which arise, and which troubled the trial court in this case, in no small measure result from attempts by appellate courts to distill the above concept into specific rules which will stand the test of rational applicability in the diverse situations faced by law enforcement officers and trial courts.

In State v. Ahern, 227 N.W.2d 164, 165 (Iowa 1975) we said:

"While the fourth amendment prohibits only unreasonable searches and seizures, warrantless searches and seizures are per se unreasonable unless they come within a few 'jealously and carefully drawn' exceptions. The burden is upon those seek-

ing to apply the exceptions to prove their applicability. Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); State v. Shea, 218 N.W.2d 610, 613 (Iowa 1974); State v. Osborn, 200 N.W.2d 798, 802 (Iowa 1972); State v. King, 191 N.W.2d 650, 654 (Iowa 1971), cert. denied 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972)."

In essence, the State claims one of the "exceptions" permitting a warrantless search is the "plain view doctrine." Succinctly stated with more precision and accuracy than achieved by the State, this doctrine is simply that it is constitutionally reasonable for authorities to seize objects come upon by inadvertence during a valid prior intrusion. Brown v. State, 15 Md. App. 584, 292 A.2d 762, 763 (1972). In Iowa recognition was accorded the concept at least as early as State v. Brant, 260 Iowa 758, 763, 150 N.W.2d 621, 625 (1967); thereafter in State v. Peterson, 261 Iowa 669, 674, 155 N.W.2d 412, 415 (1968); State v. Smith, 178 N.W.2d 329, 332 (Iowa 1970); State v. King, 191 N.W.2d 650, 655 (Iowa 1971), cert. denied 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972); State v. Jackson, 210 N.W.2d 537, 540 (Iowa 1973), and recently in State v. Merchandise Seized, 225 N.W.2d 921, 925 (Iowa 1975). On the federal level, the plain view doctrine was subjected to the most complete analytical dissection in Coolidge v. New Hampshire, supra.

Under the analysis in Coolidge there are three prerequisites to a valid plain view seizure.

First, there must be a prior justification for the intrusion into an otherwise constitutionally protected area. We have consistently required this essential. State v. Smith, supra at 332–333; State v. Brant, supra, 260 Iowa at 763, 150 N.W.2d at 625. The Coolidge rationale makes it clear the plain view doctrine deals only with "post-intrusion" seizure of evidence:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an

intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused.

\* \* \*

"The 'plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as 'hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. \* \* \*

"Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it."—Coolidge v. New Hampshire, 403 U.S. at 466–468, 91 S.Ct. at 2038–2039, 29 L.Ed.2d at 583–584.

The second *Coolidge* prerequisite to a valid plain view seizure is that the incriminating nature of the object seized must be "immediately apparent." 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. This essential is intended to prevent warrantless search from object to object until incriminating matter is at last found. *Id.* This facet of plain view has not been presented to this court, although it has caused understandable confusion in other jurisdictions in relation to writings which must be examined to determine their evidentiary value (compare State v. Pires, 55 Wis.2d 597, 201 N.W.2d 153 [1972] with State v. Fassler, 108 Ariz. 586, 503 P.2d 807 [1972]) and the quantum of certainty that an object is evidence (compare United States v. Hill, 447 F.2d 817 [7 Cir. 1971] with State v. Harwood, 94 Idaho 615, 495 P.2d 160 [1972]).

The third prerequisite, imposed by only a plurality of the *Coolidge* court, is that the discovery of the "plain view" evidence must be inadvertent. 403 U.S. at 469, 91 S.Ct. at 2040, 29 L.Ed.2d at 585. The rationale behind this limitation is to prevent *planned* warrantless searches. Although the inadvertence requirement was not imposed by the Iowa Court in State v. King, supra at 655, we later impliedly invoked it in State v. Jackson, supra at 540, quoting from an annotation at 29 L.Ed.2d 1067, 1075 that absent exigent circumstances, "the mere fact that the evidence which the officers anticipated seizing at the particular place turns out to be in plain view when they arrive there cannot justify their seizure of the evidence without their first having obtained a valid warrant."

Clearly the safeguards surrounding plain view (including inadvertence) were devised to assure the view is accidental as opposed to a planned warrantless search.

It is now apparent the decision in this case must turn on the fulcrum of the first prerequisite discussed above: the nature of the intrusion and its relation to the alleged "plain view" evidence.

In analyzing alleged "plain view" seizures it is helpful to classify three different situations involving warrantless seizure of property, including seizure of property which is not described in a warrant.

In the first situation the evidence is in open view in an area which is obviously not constitutionally protected. See Air Pollution Variance Board v. Western Alfalfa Corporation, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); State v. Neely, 261 Iowa 1107, 1112, 156 N.W.2d 840, 843 (1968). It is readily apparent all searches and seizures in all places and under all circumstances are not invalidated by the rights guaranteed in the United States Constitution, Amendment 4 and the Iowa Constitution, Article I, Section 8. The issue where to draw the line has spawned a vast body of litigation. The rationale of modern decisions ordinarily posits the determination not so much on the character of the property on which the evidence is observed (i. e., public vis-a-vis private, curtilage vis-a-vis open area) but rath-

er on existence of a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) and citations. However, the place where the seized property is located ·may be so exposed as to·immediately negate any reasonable expectation of privacy, thus, the "open field" situation is presented. As such evidence is not safeguarded by the constitution it may be seized without further justification. No intrusion in the constitutional sense is involved.

The second classification is the classic "post-intrusion plain view" of *Coolidge*. A legitimate intrusion already having been made, the *Coolidge* court held the slight expansion of the scope of the area from which a permissible seizure could be made was justified because, in balance, there was but a "minor peril to Fourth Amendment protections" as opposed to "a major gain in effective law enforcement." 403 U.S. at 467, 91 S.Ct. at 2039, 29 L.Ed.2d at 584. See also State v. Thomas, 222 N.W.2d 488, 492 (Iowa 1974).

The third situation, which actually falls outside the *Coolidge* parameters of the plain view doctrine, occurs when there is a "pre-intrusion" view of material in an area protected by an expectation of privacy from a vantage point where the viewer had a right to be. To argue such a view, in and of itself, allows a warrantless intrusion is to argue probable cause alone is sufficient to allow a warrantless search and seizure. *Coolidge* rejected this approach:

"The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontravertible testimony of the senses that an incriminating object is on the premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the

object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure."

—403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584.

See also Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782, 789 (1967); Brown v. State, supra, 15 Md.App. at 605, 292 A.2d at 774.

The most common case where a pre-intrusion view of material in an area protected by an expectancy of privacy coupled with exigent circumstances permits an intrusion and seizure is the automobile case. In those situations, the mobility of the car and potential loss of the evidence it contains frequently provides the exigency. See State v. King, supra at 655; Kuipers, Suspicious Objects, Probable Cause, and the Law of Search and Seizure, 21 Drake L.Rev. 252, 266.

■ Turning to an examination of the record before us in light of the above discussion, it is readily apparent the case *sub judice* does not fall within the "open field" exception for two reasons: first, the bottle was not visible at all from where the officers were peeking in the window and second, the place itself—an apartment dwelling with the window coverings almost closed—evidences some expectation of privacy.

Nor does this case fall within the second classification (post-intrusion plain view exception) because the State has not met its burden to show the initial intrusion was legal. It is not asserted either the entry or the search was consensual. See State v. Smith, supra at 332. Nor is it argued the search was incident to a lawful arrest. See State v. Mattingly, 220 N.W.2d 865, 868 (Iowa 1974). When Schooley picked up the cigarette-holding device it held only paper. Apparently he did not believe he had grounds for arrest until after he found the bottle. His actions were clearly aimed at obtaining evidence, then making arrests al-

though he had ample opportunity to make the arrests first. Similarly inapplicable are the other justifications for an intrusion following such an observation, helpfully collected and categorized in State v. Harwood, supra, 94 Idaho at 618, 495 P.2d at 163, and in Brown v. State, supra, 15 Md.App. at 605, 292 A.2d at 774.

It is apparent this case is closest to the third classification, a pre-intrusion view, although the view afforded the officers did not disclose the controversial bottle. While the State's brief makes a passing reference to exigent circumstances, this case on that point is legally indistinguishable from State v. Ahern, supra, where we held loud rock music and the odor of marijuana did not provide justification for a warrantless intrusion. If the viewing activities of these officers did not constitute an illegal search (an issue we are not required to determine) only inconvenience prevented them from obtaining a warrant. See Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436, 441 (1948); McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948).

The intruding officers in this case apparently did not grasp that what significantly needs to be "in plain view" is the thing to be seized, not the thing or place to be searched.

We hold the evidence so seized should have been suppressed. Because defendant may be retried, we turn briefly to other issues raised which may recur.

■ II. Defendant asserts trial court erroneously permitted the jury to consider an inference of knowledge of the presence of the marijuana and his dominion and control over it on the theory the premises were "exclusively accessible to the accused." This was the substance of instruction 8(6) to which proper objection was taken.

Direct and uncontroverted testimony disclosed the searched apartment was jointly occupied by defendant and Snook. Further, there were at least six people in the apartment when it was searched.

Although the jury was elsewhere correctly instructed on the theory of "joint access," there was simply no evidence upon which to base instruction 8(6).

■ Error in instructing the jury is presumed prejudicial unless the contrary appears beyond a reasonable doubt from a review of the whole case. State v. Sloan, 203 N.W.2d 225, 227 (Iowa 1972); State v. Barton, 258 Iowa 924, 929, 140 N.W.2d 886, 889 (1966). Giving the jury an unfettered choice between applying law not factually applicable to the case (and which somewhat eases the State's burden), or applying a proper (and more stringent) standard, essentially requires this court to impermissibly speculate as to which instruction the jury followed. See State v. Prouty, 219 N.W.2d 675, 678 (Iowa 1974); State v. Hutton, 207 N.W.2d 581, 583 (Iowa 1973).

■ III. In another proposition relied on for reversal, defendant asserts his constitutional rights were violated by instruction 8(8) in which the jury was told,

"Knowledge of the narcotic character of the controlled substance, as well as of its presence may be shown by the conduct, behavior and declarations of the accused."

Instruction 9 contained similar language relating to defendant's "words and conduct."

Defendant objected, asserting these instructions denied him the right to remain silent at trial, on pain of having his failure taken into consideration by the jury, in violation of his rights under the United States Constitution, Amendment 5. He asserted the instruction should limit consideration of his words and conduct to the premises where the marijuana was found.

■ No one disputes the principle that defendant's failure to testify may not be considered as evidence of guilt. United States Constitution, Amendment 5; Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); State v. Kimball, 176 N.W.2d 864, 868 (Iowa 1970). But obviously the required "knowledge" may be

established by defendant's conduct and declarations subsequent to the offense and at remote locations. See State v. Reeves, 209 N.W.2d 18, 23 (Iowa 1973); 1 Wharton's Criminal Evidence §§ 209, 210, pp. 437–440 (13 Ed. 1972).

This court cannot envision an instruction in this regard, nor has one been suggested, which would be neither unduly restrictive nor call the jury's attention to defendant's failure to testify. In any event, taking into consideration the full context of both instructions, we are not persuaded there is a reasonable possibility the jury will draw the subtle inference feared by defendant.

■ IV. Finally, defendant asserts trial court erred in the instruction which presented the form for verdict of guilty before the form for verdict of not guilty. We have held this sequence is insignificant, State v. Ricehill, 178 N.W.2d 288, 293 (Iowa 1970), cert. denied, 401 U.S. 942, 91 S.Ct. 945, 28 L.Ed.2d 222 (1971), and now see no compelling reason to reach a different conclusion.

Reversed and remanded for new trial.