**STATE of Iowa, Appellee,**

v.

**Clayton MANNING, Appellant.**

**No. 66815.**

Supreme Court of Iowa.

Aug. 25, 1982.

Francis C. Hoyt, Jr., Appellate Defender, Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Michael Kane, Jackson County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS, and LARSON, JJ.

HARRIS, Justice.

There is but one question presented by this appeal from defendant's first degree murder conviction. Did the trial court err in refusing to suppress evidence seized in a warrantless search of defendant's jail cell? Because we agree with the refusal we affirm the trial court.

Defendant was an inmate at the Jackson County detention center, serving a sentence for probation violation. Leonard Gregory was a fellow inmate. By reason of romantic involvement with Gail Clary defendant wished the death of her husband, Phil Clary. To induce him to kill Clary, defendant agreed to give Gregory money and a car.

On January 2, 1981, Gregory had completed his sentence and defendant was participating in a work-release program. At 8:30 a. m. they left the detention center together. The State theorized that defendant and Gregory stopped to get a handgun which they then hid beneath the front seat of the car on the passenger's side. The pair then picked up Clary at his home on the pretense of going hunting. Defendant drove the car while Clary sat beside him in the front seat. Gregory sat in the back seat behind Clary. Upon defendant's signal Gregory retrieved the gun and shot Clary, killing him. The two then dumped Clary's body in a ditch.

Incredibly, defendant phoned the county sheriff at about 11:00 a. m. that day and told him Gregory had shot Clary and run off. The sheriff met with defendant and defendant directed him to the body. Defendant returned to his jail cell at about noon.

The sheriff then moved defendant to a different cell and confiscated a number of things from the cell to which defendant had been previously assigned. These items included several letters, one of which was from a writing tablet lying on the table in the cell. Other letters were from a pile of papers in the cell and still others were from a wastebasket in the cell. The sheriff confiscated · the letters for evidentiary purposes. He had handled defendant's correspondence and was aware defendant was in contact with various women, including a woman named Gail. The relocation of defendant in the different cell and the confiscation of the letters was accomplished during the afternoon of the same day, January 2, 1981. The search was conducted without a warrant.

■ As a preliminary matter we set aside defendant's claim he was denied the effective assistance of counsel. He cites a number of failures of his trial counsel in the belief they demonstrate he was not adequately represented. We have many times held that defense counsel should be availed the opportunity to explain trial conduct in an adversary setting. The assertion should be presented in an application for a post-conviction relief. *State v. Steltzer*, 288 N.W.2d 557, 560 (Iowa 1980).

Defendant's primary assignment is his contention that the Fourth Amendment to the United States Constitution affords prisoners protection, diminished protection, from unreasonable searches and seizures. This limited protection, he says, is derived from a prisoner's reasonable, though again diminished, expectation of privacy with respect to his papers and personal effects in a jail cell. He reasons that, because of this limited protection, the State must show some recognized excuse for failing to obtain a warrant to search the cell.

■ The Fourth Amendment privilege against unreasonable searches and seizures protects only against the government's intrusion of a legitimate expectation of privacy. *State v. Dickerson*, 313 N.W.2d 526, 531 (Iowa 1981). It is not resolved that the privilege ever extends to a jail cell. There is strong indication it might not. *Bell v. Wolfish*, 441 U.S. 520, 556, 99 S.Ct. 1861, 1883, 60 L.Ed.2d 447, 480 (1979); *Lanza v.*

*New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384, 388 (1962); *United States v. Hitchcock*, 467 F.2d 1107, 1108 (9th Cir. 1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973). A number of courts hold there is some diminished, remnant, or residue Fourth Amendment protection in a jail cell. Such a principle has been applied to a strip search. *United States v. York*, 578 F.2d 1036, 1041 (5th Cir. 1978), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). But it does not necessarily protect against monitoring conversations with a visitor. *United States v. Hearst*, 563 F.2d 1331, 1345 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). The principle has been applied to protect against cell searches. *United States v. Stumes*, 549 F.2d 831, 832 (8th Cir. 1977).

We need not and do not decide whether a right of privacy extends into a jail cell. If it were to extend there, on some limited basis, it would not do so here. Defendant's treatment of the papers seized contradicts any claim of privacy. One letter was in a tablet on a table in plain view. Others were in the wastebasket. The manner in which the papers were scattered, and discarded, shows that defendant made no attempt to withhold them from observation by others, including the sheriff, whose right to enter the cell is indisputable. Defendant cannot claim his privacy was violated when he himself did not treat the papers as a matter of privacy. *State v. Davis*, 228 N.W.2d 67, 72 (Iowa 1977).

The trial court properly rejected defendant's Fourth Amendment challenge.

AFFIRMED.