STATE of Iowa, Appellee,

v.

James Joseph FLYNN, Appellant.

No. 84–393.

Supreme Court of Iowa.

Jan. 16, 1985.

Lylea M. Dodson, Des Moines, and William L. Kutmus and Mark S. Pennington of Kutmus & Pennington, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Steven K. Hansen, Asst. Atty. Gen., and Dan L. Johnston, Co. Atty., for appellee.

WOLLE, Justice.

Defendant James Joseph Flynn was tried and convicted on one count of keeping a gambling house in violation of Iowa Code section 722.5 and five counts of bookmaking in violation of Iowa Code section 725.7. Defendant contends the trial court committed error of constitutional magnitude when it admitted into evidence the contents of cassette tapes found by a private citizen and delivered into the custody of police. Finding no error, we affirm the convictions.

An abbreviated, jury-waived trial resulted from the parties' stipulation to most of the pertinent facts. Because defendant's only ground of appeal is that the admission of seized records violated his constitutional rights under the Fourth Amendment, we make an independent de novo review of the totality of the relevant circumstances. *State v. Eubanks*, 355 N.W.2d 57, 58 (Iowa 1984).

In December of 1982, defendant learned that his home was under police surveillance. As a result, he decided to move certain records of financial transactions located in his home to a different location. The records in question consisted of thirty-three cassette tapes, two notebooks, two sheets of paper with names and numbers, and a ledger book. Defendant considered various locations for the records, and he decided to transfer these records to a lock-

er contained in a locked Quonset building on the premises of the Urbandale Golf and Country Club of which he was a member. The Quonset building in question was the location where defendant stored his motorized golfing cart during the winter season when the club was closed.

On December 11, 1982, defendant took these records in two paper sacks to the golf club grounds. The club was closed for the season. Defendant observed no one in the area. The area was not visible to the general public, was fenced, and was posted with "no trespassing" signs. When defendant reached the building, his key would not unlock the door. Believing he had brought the wrong key, defendant temporarily placed the two sacks containing the records beneath a tarpaulin which was covering a quantity of peat moss used for golf course maintenance. Defendant then left the golf club premises to obtain the proper key. He did not return for approximately two and one-half hours. When he returned the sacks and their contents had disappeared.

After being indicted on the present charges, defendant learned that the records in question were in the hands of the police. He moved to suppress these records on the basis that they had been obtained as a result of an illegal search contrary to the guarantees of the fourth amendment to the federal constitution. At the suppression hearing the evidence disclosed that a private person had found the records in question beneath the tarpaulin where defendant had left them. That person had called a police officer with whom he was acquainted, and on the officer's advice the private person brought the records to the police station. There the police officer looked at the records, played two cassette tapes, and learned the identity of defendant and the nature of his gambling activity. He then turned the sacks of records and tapes over to vice investigation officers.

The defendant sought the identity of this private citizen, but the trial court refused to require the disclosure of that person's name. In lieu of such a disclosure, the trial court conducted an in camera hearing out of the presence of defendant and his counsel with respect to the circumstances under which the records in question came into police possession. In its ruling denying the motion to suppress, the court made a finding of fact, not challenged on this appeal, that the private person who found the records was not working for or under the direction of the police before he made his phone call to the police officer with whom he was acquainted. The court held that the actions of the police officers had not rendered illegal the private person's initial seizure of the two sacks of records.

The case was tried to the court. Three witnesses testified that they had placed bets with the defendant. The parties stipulated to the testimony of a police officer who had listened to the cassette tapes. The contents of the tapes implicated defendant in illegal betting activities. The district court found from this evidence that defendant was guilty of five counts of bookmaking and one count of keeping a gambling house.

Defendant contends on appeal that the private citizen status of the initial finder of the two sacks of records did no more than excuse that person's seizure of the records at the golf club. Defendant argues that the police officers' warrantless playing of the cassette tapes infringed his Fourth Amendment privilege against an unreasonable search and seizure of his personal effects. The State responds that no warrant was required because the defendant left the sacks of records in a place where he had no reasonable expectation of privacy in their contents. Analogizing from cases involving seizure of contraband in open fields, the State argues that defendant could not reasonably expect the records to retain their protected status when all 100 members of the private club, their guests, and other persons frequenting the grounds would have ready access to them.

 The Fourth Amendment protects only against the government's intrusion upon a person's legitimate expectation of privacy. *State v. Manning*, 323 N.W.2d

217, 218 (Iowa 1982). The correct test of legitimacy is not whether the individual has chosen to conceal some private activity but "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States,* —— U.S. ——, ——, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 227 (1984); *see United States v. Jacobsen,* —— U.S. ——, ——, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984) ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."). The question we must answer under the circumstances of this case—and which we answer in the negative—is whether the defendant was entitled to expect that his sacks of records would be protected from a government search, regardless of who might discover them, when he placed them temporarily under a tarpaulin-covered pile of peat moss at his golf club.

■ We have previously noted that the place where seized property is located may be so exposed as to negate any reasonable expectation of privacy. *See State v. Kramer,* 231 N.W.2d 874, 879 (Iowa 1975); *State v. Davis,* 228 N.W.2d 67, 72 (Iowa 1975). Moreover, since the United States Supreme Court first stated its "open fields" doctrine in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), it has been clear that the location of property seized by authorities may be of critical importance in determining whether the search and seizure were lawful. In *Hester,* federal revenue agents trespassed upon an open field to seize broken bootleg-whiskey containers in an open field where defendant had dropped them. The court rejected Hester's Fourth Amendment contention, holding

> [T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law.

265 U.S. at 59, 44 S.Ct. at 446, 68 L.Ed. at 900. Since *Hester,* courts have struggled

to decide whether places where contraband has been found were more like an open field or a private residence. *See Conrad v. State,* 63 Wis.2d 616, 218 N.W.2d 252 (1974) (discussing numerous cases applying or rejecting "open fields" doctrine, then holding doctrine applicable to body covered by rocks in field).

The United States Supreme Court has now eased somewhat the difficulty of applying the open fields doctrine in borderline cases. In *Oliver v. United States,* —— U.S. ——, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), a case decided after the trial court admitted into evidence defendant's sacks of records and tapes, the Court reaffirmed the open fields doctrine and elaborated on reasons why it matters where a person places the items which later are the subject of a search and seizure.

*Oliver* decided two cases with slightly differing factual circumstances. In one case, two narcotics agents went to a farm to investigate reports of marijuana cultivation. At the farm, they drove past a locked gate with a "no trespassing" sign. The agents walked around the gate and found a field of marijuana over one mile from the defendant's home. The Court affirmed the conviction of defendant for manufacturing a controlled substance. In the second case, two police officers entered woods behind the defendant's house and found marijuana patches. They thereafter seized marijuana using warrants which were premised on information obtained during the warrantless search of the woods. The warrants were upheld.

The Court concluded that neither defendant had a reasonable expectation of privacy in the controlled substances found in open fields, even though governmental authorities had trespassed in locating the substances. The Court explained how location of contraband relates to the determination whether an expectation of privacy is legitimate and reasonable.

> [O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance.

There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields.... And both petitioner Oliver and respondent Thorton concede that the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society' recognizes as reasonable.

— U.S. at ——, 104 S.Ct. at 1741, 80 L.Ed.2d at 224–25.

Applying this analysis to the facts here, we conclude that defendant's choice of the peat moss pile as the temporary location for his records, gave rise to no constitutionally protected privacy right. The open area of the country club was accessible to all of the private members and others given permission to enter. It was not within the curtilage of a protected area.

■ We do not doubt that defendant hoped his records would not be discovered under the tarpaulin, and this may have amounted to his subjective expectation that anyone finding them there would respect his personal interest in the secrecy of their contents. Such subjective hopes or expectations, however, are not sufficient to activate constitutional protection. As the Court clearly stated in *Oliver:*

> The test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity. Rather the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.

■ Defendant argues that we should distinguish between the seizure of the two sacks and the subsequent playing of two cassette tapes by police officers after the private citizen had yielded possession to them. He contends that we should follow two cases he cites for the proposition that when the police officers played the tapes without first obtaining a warrant, the police converted what may initially have been an authorized seizure by a private person into an unreasonable search requiring suppression of the played material.

The first case cited for this proposition by defendant is *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In *Walter*, a private carrier had delivered a number of sealed packages to the wrong party. The party to whom the packages were delivered discovered in opening them that they contained sexually suggestive drawings and explicit verbal descriptions of films, together with canisters holding the films. When FBI agents obtained the canisters, they projected the films on a screen for viewing. The United States Supreme Court reversed the resulting obscenity convictions of persons to whom the films were being delivered, holding that the actions of the authorities violated the Fourth Amendment. The Court decided that the viewing of the films went beyond what the private citizens had done in looking at the outside of the canisters, and that any further search required a search warrant.

In the similar second case which defendant cites, *United States v. Haes*, 551 F.2d 767 (8th Cir.1977), a private carrier opened a package being mailed to the defendant and discovered reels of film. Suspecting from the labels on their containers that the films were pornographic, the carrier contacted FBI agents who viewed the films. In reversing the subsequent obscenity convictions, the court of appeals distinguished between the initial private search and the subsequent government search. The court held that the FBI agents needed a warrant to view the contents of the film even though no warrant was required to obtain the containers from the private carrier.

■ We have no quarrel with the holdings in *Walter* and *Haes*, but find both are distinguishable on their facts. As the Court noted in *Walter*, it is well established

that an individual's expectation of privacy in mailed packages is accorded special protection under the Fourth Amendment. 447 U.S. at 654 n. 5, 100 S.Ct. at 2400 n. 5, 65 L.Ed.2d at 416 n. 5 (quoting *Ex parte Jackson*, 96 U.S. 727, 732–33, 6 Otto 727, 732–33, 24 L.Ed. 877, 879 (1877)). Under the facts in both *Walter* and *Haes*, the courts initially decided that the person to whom the packages were mailed had a protected privacy interest. The cases are clearly distinguishable from the facts here involving a defendant who left paper sacks of unsealed tapes and other materials where others might readily find and inspect them.

*Walter* and *Haes* are also distinguishable from the facts here in other respects that do not involve this privacy analysis. Both cases involved allegedly pornographic films and therefore triggered First Amendment concerns. *See Walter v. United States*, 447 U.S. at 655, 100 S.Ct. at 2400–01, 65 L.Ed.2d at 417; *United States v. Haes*, 551 F.2d at 770. Had the audio cassettes in this case been used to transmit ideas within the ambit of the First Amendment, rather than as a simple method of recordkeeping not unlike the placing of writing on paper, the tapes in this case might have been accorded per se constitutional protection like the films in *Walter* and *Haes*. The use of cassette tapes for their utility as an alternative form of recordkeeping, however, has not brought into play First Amendment concerns. *See United States v. Truglio*, 731 F.2d 1123, 1127–28 (4th Cir.1984); *United States v. Bonfiglio*, 713 F.2d 932, 938–39 (2d Cir.1983).

▮▮▮▮ Because our affirmance of the trial court's ruling on admissibility of defendant's records turns on our conclusion that defendant had no reasonable expectation of privacy in their contents, we need not decide whether it made a difference that the sacks of records were found by a private citizen rather than as part of an investigation initiated by governmental authorities. We do note, however, that the Fourth Amendment does not apply to acts of private individuals that are neither motivated by nor performed on behalf of the government. *See generally Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.6 (West 1978). We also note that government officials do not necessarily violate the privilege against unlawful search and seizure when they peruse documents and records obtained from private individuals who have seized them. *See United States v. Snowadzki*, 723 F.2d 1427, 1430 (9th Cir.1984). Consequently, even if the police officers had violated the Fourth Amendment in playing the cassette tapes and learning their contents, their reading of the notebooks, lists and ledgers contained within defendants two sacks would not have required suppression of those records.

Defendant has not shown that the records admitted into evidence against him at trial should have been suppressed and excluded by reason of the Fourth Amendment to the United States Constitution. The court did not err in admitting those records at trial, and the convictions of defendant for keeping a gambling house and bookmaking should therefore be affirmed.

AFFIRMED.

All Justices concur except McCORMICK and CARTER, JJ., who dissent.

McCORMICK, Justice (dissenting).

I am unable to agree with the holding that the fourth amendment was not violated when the police officers listened to defendant's cassette tapes without having obtained a search warrant authorizing them to do so. The controlling question is whether defendant had a reasonable expectation of privacy in the contents of the tapes. No doubt exists of defendant's subjective expectation of privacy. Thus the issue is whether his expectation is one that society is prepared to consider reasonable. *See United States v. Jacobsen*, —— U.S. ——, ——, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85, 100 (1984).

Defendant put the materials in sacks that he intended to store in a locker in a

locked quonset hut on the premises of his country club. The hut was located in a valley on the golf course a considerable distance from the surrounding residential area. The club premises were marked with "no trespassing" signs, and only club members or their guests had a right of access. Because the time was mid-December, the course was not actually in use.

When defendant discovered he could not obtain access to the quonset hut, he looked for another place to secrete his materials on a temporary basis. He saw a large pile of peat moss covered by a tarpaulin near the quonset hut. He looked carefully in all directions and saw no one else on the club premises. The site could not be seen from the residences near the golf course. The peat moss and tarpaulin were frozen. Defendant broke the seal on the tarpaulin, lifted a corner sufficiently to place his sacks underneath it, and placed the frozen tarpaulin over the sacks to conceal them. The sacks were not visible. They were to remain under the tarpaulin only until defendant returned for them less than three hours later.

In these circumstances it defies reality to suggest that defendant's expectation of privacy was not objectively reasonable and legitimate. In *Rakas v. Illinois*, 439 U.S. 128, 143–44, n. 12, 99 S.Ct. 421, 430–31, 58 L.Ed.2d 387, 401–02 (1978), the court noted that determining whether expectations of privacy are reasonable involves "reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Here the defendant's presence on the premises of the private golf club was lawful. He obviously had authority to store personal possessions there. The fact that the place he chose for temporary storage of the two sacks turned out not to be secure does not diminish his right to expect that his interest in his property would be respected by anyone reasonably likely to be on the premises. I believe the record sufficiently demonstrates a legitimate expectation of privacy.

The private citizen did not infringe defendant's fourth amendment rights in seizing the materials. This is because the amendment protects only against governmental action. The police officers, however, went beyond the citizen's seizure when they listened to the cassette tapes. This is the principle involved in *United States v. Jacobsen*, ⸺ U.S. ⸺, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), and *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). This principle does not depend on the implication of any first amendment issue. Once it is established that the person has a reasonable expectation of privacy, an invasion of that interest by the government constitutes a search.

Treating this as an "open fields" case stretches that doctrine beyond its limits. A person may have a legitimate expectation of privacy in even a public place. Although property concepts may be a source of a legitimate expectation of privacy, they do not become the measure of the government's right to intrude. " '[T]he premise that property interests control the right of the Government to search and seize has been discredited.' " *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967) (quoting *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782, 790 (1967)). The open fields doctrine concerns the right of officers to enter an open field to conduct a search without a warrant. *Oliver v. United States*, ⸺ U.S. ⸺, 104 S.Ct. 1735, 1738, 80 L.Ed.2d 214 (1984). No such event occurred in the present case.

This case is more like *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and its progeny. In *Chadwick* the Court held that an individual who placed personal effects in a locked footlocker had a legitimate expectation that the contents would remain free from public examination: "No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause." *Id.* at 11, 97 S.Ct. at 2483, 53 L.Ed.2d at 548. Defendant's temporary concealment of his effects under the tar-

paulin in the present case was an analogous effort to shield their contents from public examination. The relevant question here is not whether probable cause existed upon which a warrant could have been issued. By listening to the cassette tapes the officers conducted a warrantless search. As in *Chadwick*, there being no emergency, "it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides." *Id.*

I would hold that the court erred in overruling defendant's motion to suppress the audio cassettes.

CARTER, J., joins this dissent.