[EDITORS' NOTE: THE PUBLICATION STATUS OF THIS OPINION HAS NOT BEEN DETERMINED. THE PRECEDENTIAL VALUE OF CASES WHICH ARE NOT YET PUBLISHED IS GOVERNED BY IOWA CT. R. 6.14 (5).]
I. Background Facts Proceedings
Raymond Jaeger owned land in Dubuque County. On November 30, 1999, and December 2, 1999, the Dubuque County Zoning Administrator, Anna O'Shea, and a deputy sheriff, Harley Pothoff, went onto Jaeger's property and made a videotape of the condition of the property. The county charged Jaeger with two counts of operating a junkyard without the proper permits, in violation of a county zoning ordinance.[1]
After a bench trial, a magistrate found Jaeger guilty of violating the county ordinance. He was sentenced to pay a fine and to serve twenty-one days in the county jail on each count, with all but seven days of each sentence suspended. Thus, in total he was sentenced to forty-two days in jail, with all but fourteen days suspended. Jaeger was placed on probation for a period of twenty-one months. The court ordered him to remove items from his property according to a specific schedule.
Jaeger appealed to the district associate court. The judgment and sentence of the magistrate were affirmed. Jaeger sought discretionary review by the Iowa Supreme Court. The supreme court denied the application for discretionary review, and procedendo issued on February 28, 2003. The magistrate created a new schedule for Jaeger to remove items from his property.
Jaeger did not remove the requested items from his property within the allotted time. The county initiated probation revocation and contempt proceedings against Jaeger. Jaeger stated he transferred the property to Dennis Sharkey, and Sharkey had obtained an injunction prohibiting him from entering the property. The magistrate found this transaction was a sham. The magistrate found Jaeger was in contempt and could serve thirty days in jail.[2] Jaeger was given until May 6, 2004, to purge himself of contempt by bringing the property into compliance with the court's previous orders. On May 21, 2004, the magistrate found Jaeger had not make a good faith effort to clean up the property. Jaeger was sentenced to twenty days in jail for contempt.
On December 17, 2004, Jaeger filed an application for postconviction relief. He claimed he received ineffective assistance due to counsel's failure to timely request a jury trial or to file a motion to suppress the warrantless search of his property. Jaeger also claimed he should not have been found in contempt because the Sharkey injunction made it impossible for him to comply with the court's orders. The district court denied Jaeger's request for postconviction relief. He appeals.
II. Standard of Review
Our scope of review in postconviction proceedings is for the correction of errors of law. Iowa R. App. P. 6.4; Ledezma v.State, 626 N.W.2d 134, 141 (Iowa 2001). We review constitutional claims, such as ineffective assistance of counsel, de novo. State v. Bergmann, 600 N.W.2d 311,313 (Iowa 1999).
III. Ineffective Assistance
To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied applicant a fair trial. State v. Shanahan,712 N.W.2d 121, 136 (Iowa 2006). The petitioner must overcome a strong presumption of counsel's competence, and a postconviction applicant has the burden to prove by a preponderance of the evidence that counsel was ineffective. Strickland v.Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065,80 L.Ed.2d 674, 694-95 (1984); Osborn v. State,573 N.W.2d 917, 922 (Iowa 1998). Absent evidence to the contrary we assume that the attorney's conduct falls within the wide range of reasonable professional assistance. State v. Hepperle,530 N.W.2d 735, 739 (Iowa 1995).
A. Jaeger contends he received ineffective assistance due to counsel's failure to object to the videotape on the ground that the county had violated his Fourth Amendment rights by a warrantless search of his property. A search warrant was not obtained before O'Shea and deputy Pothoff went onto Jaeger's property while filming the videotape. Jaeger states the property was surrounded by a privacy fence, and he had an expectation of privacy in his property.
"The Fourth Amendment protects only against the government's intrusion upon a person's legitimate expectation of privacy."State v. Flynn, 360 N.W.2d 762, 764 (Iowa 1985). People have a legitimate expectation of privacy in their homes.State v. Legg, 633 N.W.2d 763, 767 (Iowa 2001). There is also a legitimate expectation of privacy in the curtilage to the home, such as a garage. Id. at 768.
The special protection of the Fourth Amendment, however, is not extended to open fields. Flynn, 360 N.W.2d at 765
(citing Hester v. United States, 265 U.S. 57, 59,44 S. Ct. 445, 446, 68 L. Ed. 898, 900 (1924)). In Oliver v.United States, 466 U.S. 170, 178, 104 S. Ct. 1735, 1741,80 L. Ed. 2d 214, 224-25 (1984), the United States supreme court noted that even where an open field is surrounded by a fence and no trespassing signs, the public and police may lawfully survey the property from the air. The court concluded, "the asserted expectation of privacy in open fields is not an expectation that `society' recognizes as reasonable." Oliver,466 U.S. at 179, 104 S. Ct. at 1741, 80 L. Ed. 2d at 225.
There was no evidence in the present case that there was a home on the property in question. Therefore, the property could not be considered "curtilage" to a home. We conclude the open field doctrine applies, and Jaeger did not have a legitimate expectation of privacy in the property. The Fourth Amendment did not apply, and trial counsel did not have a duty to object to the admission of evidence obtained without a search warrant.
B. Jaeger asserts he received ineffective assistance because his trial counsel did not make a timely request for a jury trial. He claims his counsel failed to advise him of his right to request a jury trial. On this issue, the district court determined Jaeger's complaints were not credible. The court stated, "The plaintiff's PCR record does not establish he wasn't informed he could demand a jury trial or that a trial to the court wasn't a strategic decision. The defendant's assertions alone are unconvincing."
We agree with the district court's conclusion that Jaeger failed to show he had not been informed of his right to a jury trial.[3]
IV. Contempt
Jaeger asserts he should not have been found in contempt because it was impossible for him to comply with the court's orders. He states Sharkey obtained an injunction prohibiting him from entering onto the property. He claims he was unable to remove items from the property as ordered by the court.
The district court determined this was not a proper issue for postconviction proceedings.[4] Iowa Code chapter 822 (2003) applies to persons convicted of a public offense. The object and purpose of contempt proceedings "is not to punish a public offense, but to compel obedience to and respect for the order of the court." McDonald v. McDonald, 170 N.W.2d 246, 247
(Iowa 1969) (citing Gibson v. Hutchinson, 148 Iowa 139,140, 126 N.W. 790, 790 (1910)). A finding of contempt is not a public offense, and therefore, chapter 822 does not apply.
We conclude postconviction proceedings are not a valid means of challenging the order finding Jaeger in contempt.
We affirm the decision of the district court denying Jaeger's request for postconviction relief.
AFFIRMED.
[1] The complaint was originally made by the State of Iowa, but was subsequently amended to properly show the county as the prosecutor.
[2] Jaeger filed a petition for writ of certiorari, challenging the finding that he could serve thirty days in jail. The district court denied the writ, but found Jaeger could not be sentenced to more time than originally imposed. Jaeger had been sentenced to forty-two days in jail, and had served fourteen days, leaving a possible twenty-eight days that could be served.
[3] An undated, unfiled "affidavit" by Jaeger stating his counsel did not discuss a jury trial with him was apparently attached to his reply brief. This is the only reference in the record to any communication between Jaeger and his counsel concerning a jury trial. It was improper to attempt to insert this information into the record in this manner. Even if the district court considered this affidavit, it nevertheless found Jaeger's denial of such a discussion with his counsel not credible. Other incidents of untruthful statements by Jaeger would support such a conclusion.
The presumption that Jaeger's counsel properly performed his duties respecting a jury trial is wholly unrebutted in this record. The district court's conclusion that Jaeger failed to show his counsel did not communicate appropriately with him is supported by the record.
[4] The district court noted a postconviction action is an appropriate means to determine whether a sentence is illegal. Here, the sentence did not exceed the statutory maximum, and no issue remained which could be resolved through postconviction proceedings.