## IN THE COURT OF APPEALS OF IOWA

No. 13-1111
Filed October 15, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRANDON CLARK MANNING,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

A defendant challenges his conviction for sexual exploitation of a minor. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Carlyle Dalen, County Attorney, and Rachel A. Ginbey, Assistant County Attorney, for appellee.

Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

A jury convicted Brandon Manning of sexual exploitation of a minor in violation of Iowa Code section 728.12(3) (2011) based on his possession of illicit images downloaded onto a flash drive.[1]  The flash drive came into the hands of police by way of private citizens who found it in Manning's tool bag and viewed its contents before turning it over to authorities.  Police opened the files on the flash drive without obtaining a search warrant.

Manning attacks his conviction on two fronts.  First, he claims his right to privacy was violated by the private party seizure and subsequent police search of the flash drive.  Second, he claims the State did not offer substantial evidence he possessed the flash drive found in his tool bag.

Because the federal and state constitutions only protect against unreasonable search and seizure by state actors, and because the police search did not exceed the scope of the private actors' viewing of the flash drive, we affirm the district court's denial of the motion to suppress.  In addition, because the record contains ample evidence Manning knowingly possessed the pornographic images of children saved on the flash drive, we will not disturb the jury's verdict.

I.      **Background Facts and Proceedings**

In October 2012, Paul Nieman needed to borrow tools from his friend Brandon Manning, but Manning was in jail.  Nieman had used Manning's tools in

---

[1] An investigator with training in forensic analysis of computers testified the "thumb drive" or "flash drive" at issue in this case could be described as a digital storage device.

the past and told Manning's girlfriend, Patricia Pearce, he intended to borrow them again. Nieman found the tool bag inside Manning's truck.

Inside the lining of the tool bag, Nieman found a flash drive. Because of the way the flash drive was hidden, Nieman was "curious" about its contents, so he plugged it into his laptop computer. On the flash drive he saw what he considered "indecent" photographs of children. Nieman recalled the children depicted were four to five years old and looked like they were engaging in sex acts.

Nieman then called Barb Corey, who had dated Manning for three years, and told her he found a flash drive with "pictures of little kids on it." Corey picked up the drive from Nieman and "checked to see what all things were on it." She saw images of a "cartoon" portrayal of child pornography she had seen Manning drawing while they were dating. Also on the flash drive, Corey saw sexually explicit photographs of herself she remembered Manning taking and "a lot of pictures of him in his apartment." Corey testified she did not load any additional images onto the flash drive before she turned it over to the Mason City police officer Jason Hugi.

Officer Hugi recalled Corey bringing in the flash drive on October 21, 2012. Corey told the officer she had received the drive from a friend of hers and was "concerned that there were some pictures on there of her children, pornographic pictures of her children." Hugi took the flash drive to Investigator Jeremy Ryal, who had specialized training in computers and child pornography.

Investigator Ryal placed the drive into his computer and the two officers viewed the images. The drive contained eighteen separate images of child pornography, seventy-two sketched images of children engaged in sex acts, and fifteen photos showing Manning's face. The images were all organized in a folder titled "overtime work candy" and all appeared to be loaded to the drive on the same day, February 20, 2012, around the same time of day. Officer Hugi interviewed Manning about the drive. Manning denied ownership of the drive containing the images.

On March 27, 2013, the State charged Manning by trial information with sexual exploitation of a minor, an aggravated misdemeanor. On May 31, 2013, Manning's counsel filed a motion to suppress the evidence on the flash drive, alleging it was obtained in violation of his right against illegal searches under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. After a suppression hearing on June 3, 1013, the district court overruled the motion to suppress, reasoning as follows:

> The discovery of this drive by Mr. Nieman and the viewing of it by Mr. Nieman and Ms. Corey was done without any knowledge of law enforcement, and without any intent on their part to assist law enforcement. The first law enforcement knew of these private searches was when Ms. Corey presented the drive to them and told them that she had concerns that it contained child pornography of her children. At that point the private search had already uncovered the existence of illegal material on the thumb drive, and therefore the subsequent search by law enforcement was not unconstitutional under the federal or state Constitution.

After the original proceedings resulted in a mistrial, a second trial began on June 14, 2013. A jury found Manning guilty and the court sentenced him to serve a prison term not to exceed two years. Manning now appeals.

**II.    Analysis**

Manning argues the district court erred in denying his motion to suppress the evidence found on the flash drive, alleging the illicit images were the fruits of an illegal warrantless search.  He also argues the conviction is not supported by sufficient evidence of possession.  We will address each claim in turn.

**A.    Motion to Suppress**

**1.    Ineffective Assistance of Counsel**

We first consider Manning's claim his trial counsel was ineffective for filing the motion to suppress outside the deadline without good cause.  A motion to suppress must be filed within forty days of arraignment.  Iowa R. Crim. P. 2.11(4).  Manning was arraigned on April 4, 2013; but the motion to suppress was not filed until May 31, 2013.  The motion was filed fifty-eight days after arraignment.  Counsel did not give a reason for the late filing.

We review ineffective-assistance-of-counsel claims de novo.  *State v. Showens*, 845 N.W.2d 436, 440 (Iowa 2014).  To succeed on his claim, Manning must show counsel failed to perform an essential duty resulting in prejudice to the defense.  *See Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010).  To prove prejudice, Manning must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The claim fails if either element is unproven.  *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

We reject Manning's claim on the prejudice prong.  The district court noted the motion's untimeliness in its decision, but still ruled on the merits—finding the

search to be legal under both the federal and state constitutions. Manning suffered no prejudice because the district court reached the merits of the motion despite its untimeliness. *See generally State v. Ortiz*, 766 N.W.2d 244, 250 (Iowa 2009).

### 2.     Constitutionality of Police Action

The district court denied Manning's motion, finding the seizure of the flash drive by private citizens and the viewing of its contents by those citizens and by the police did not violate either the Fourth Amendment or article 1, section 8. On appeal, Manning does not urge a different substantive standard for analyzing a private search under the state provision than is applied by the United States Supreme Court under the Fourth Amendment. We therefore apply the federal standard in this case. *See State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013).

We review claims of unreasonable search and seizure de novo, independently evaluating the totality of circumstances. *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). Manning divides his suppression claim into two arguments. First, he asserts "[i]ntrusion by a non-governmental actor upon a citizen's legitimate expectation of privacy is a constitutional violation." Second, he contends "[l]aw enforcement's accessing of the information contained on the flash drive without a warrant" was a constitutional violation. We find no merit in either argument.

### a.     The Private Seizure

Manning starts by asserting he had a legitimate expectation of privacy in the flash drive because it was stored in his tool bag in his parked truck. He

distinguishes his circumstances from two cases relied on by the district court: *State v. Flynn*, 360 N.W.2d 762 (Iowa 1985), and *State v. Barrett*, 401 N.W.2d 184 (Iowa 1987). In *Flynn*, the defendant buried evidence of his bookmaking under peat moss on a golf course. 360 N.W.2d at 765. In *State v. Barrett*, an incriminating journal was left in a restaurant. 401 N.W.2d at 190. Manning contends he did more to secure his privacy interests in the flash drive than the defendants in *Flynn* and *Barrett*.

It is true the supreme court considered the public nature of the places where the evidence was found in *Flynn* and *Barrett*. *See Barrett*, 401 N.W.2d at 190 ("Given the public nature of the place where the journal was discovered and examined by the restaurant employees we conclude that defendant's constitutional claims are no more meritorious than those rejected in *State v. Flynn . . . .*"). But the adequacy of Manning's effort to protect his privacy interest in the flash drive is not the salient question here. Presupposing his expectation of privacy in the flash drive, the threshold question is whether the actions of Nieman, a private citizen, in finding the flash drive and examining at least some of its contents, violated the Fourth Amendment.

The Fourth Amendment does not apply to a search or seizure, even an unreasonable one, carried out by a private individual who is not acting as a government agent or with the knowledge or participation of a government official. *See United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984); *Flynn*, 360 N.W.2d at 767. Manning does not claim, and the facts do no suggest, that Nieman was

acting as an agent of the police or that the police knew about or participated in Nieman's seizure of the flash drive from the tool bag.

The private search exception applies here. *See United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013). Nieman's preview of the contents of the drive was neither instigated by nor performed on behalf of the police. After discovering "indecent" images of children on the flash drive, Nieman took the evidence to Corey, another private citizen. Corey likewise viewed the contents of the flash drive on her own accord, before turning it over to police.

A private search, untainted by governmental involvement, implicates no Fourth Amendment interest regardless of whether the search was accidental or deliberate, reasonable or unreasonable, and regardless whether the search may give rise to civil or criminal liability. *Jacobsen*, 466 U.S. at 115. "Our courts have recognized this principle which differentiates private individuals who act on their own and government agents." *State v. Knudsen*, 500 N.W.2d 84, 85 (Iowa Ct. App. 1993). "Evidence obtained by an individual does not fall within the exclusionary rule and is admissible in a trial." *State v. Holliday*, 169 N.W.2d 768, 771–72 (Iowa 1969). Because constitutional protections against unreasonable searches and seizures do not apply to private citizens acting without government knowledge, Manning was not entitled to suppression based on the actions of Nieman or Corey.

### b.    The Police Search

Manning next argues once the police received the flash drive from Corey, the officers needed to obtain a search warrant before viewing the images on it.

Manning compares the flash drive to a cell phone and relies on *Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (holding in search-incident-to-arrest case, officers needed warrant to search cell phone data).

The State contends the police did not need a warrant to search the flash drive as its contents were viewed by private individuals before being turned over to police and the police reviewed the images on the drive in the same way as the citizens did. The State's position is supported by federal case law.

When the initial invasion of the defendant's expectation of privacy is occasioned by the action of private parties, as was the case here, additional invasions by the police "must be tested by the degree to which they exceeded the scope of the private search." *Jacobsen*, 466 U.S. at 115. In *Jacobsen*, employees of a private freight carrier damaged a package and then opened it in compliance with company policy on insurance claims. *Id.* at 111. They discovered a tube with four plastic bags nested one inside the other; the innermost bag contained six and one-half ounces of white powder. *Id.* The employees called the Drug Enforcement Administration, and then replaced the bags in the tube. *Id.* The DEA agents removed the bags, saw the powder, and determined it was cocaine by field testing. *Id.* at 111-12. The *Jacobsen* court concluded the DEA agent's removal of the plastic bags from the tube and visual inspection of their contents "enabled the agent to learn nothing that had not previously been learned during the private search." *Id.* at 120. The Court said "[t]he advantage the Government gained thereby was merely avoiding the risk of a flaw in the employee's recollection," and concluded the examination did not

violate the Fourth Amendment because "[p]rotecting against the risk of misdescription hardly advances any legitimate privacy interest." *Id.* at 119. The Court also found the field test was not a search as the action did not infringe "any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct." *Id.* at 126.

Several jurisdictions have applied the principles of *Jacobsen* to computer searches. For example, in *United States v. Tosti*, 733 F.3d 816, 823 (9th Cir. 2013), police searched a hard drive following the discovery of child pornography by a CompUSA employee. The Ninth Circuit found no Fourth Amendment violation, stating, "[W]hen [the private individual] initially viewed Tosti's pictures, their content was discernable, and any expectation of privacy Tosti had in those photographs was extinguished." The Eight Circuit considered a similar question in *Goodale*, where private parties brought the defendant's laptop to the police station to show officers the web history of teen pornography sites. *U.S. v. Goodale*, 738 F.3d 917, 920 (8th Cir. 2013). The *Goodale* court applied the private search exception, emphasizing: "No evidence suggests that the officer's viewing went further than M.R.'s search." *Id.* at 921.

A similar result was reached by the Seventh Circuit, which held Illinois police did not exceed the scope of a private search conducted by a sexual assault victim and her mother when the police viewed images contained on digital media devices provided to them by the women. *Rann v. Atchison*, 689 F.3d 832 (7th Cir. 2012). The *Rann* court adopted the Fifth Circuit's reasoning in

*United States v. Runyan*, 275 F.3d 449 (5th Cir. 2001). Analogizing digital media storage devices to containers, the Fifth Circuit ruled police officers did

> [E]xceed the scope of a prior private search when they examine a closed container that was not opened by the private searches unless the police are already substantially certain of what is inside that container based on the statements of the private searches, their replication of the private search, and their expertise.

*Runyan*, 275 F.3d at 463. The Seventh Circuit held that because the victim and her mother "knew the contents of both digital media devices they provided to the police" the problem with exceeding the scope of the original search discussed in *Runyan* was not implicated. *Rann*, 689 F.3d at 838 (noting "even if the police more thoroughly searched the digital media devices than S.R. and her mother did and viewed images that S.R. or her mother had not viewed, per the holding in *Runyan*, the police search did not exceed or expand the scope of the initial private searches").

Using these private search cases as a guide, we confront the question whether the search by the Mason City police exceeded the scope of the searches by Nieman and Corey. Corey presented the flash drive to Officer Hugi, explaining her concern it contained images of child pornography.[2] The actions by Officer Hugi and Investigator Ryal to access the contents of the flash drive and to confirm it indeed contained images of illicit depictions of children did not exceed the scope of the initial private searches. Because Nieman and Corey saw the incriminating images on the drive, Manning's constitutional expectation

---

[2] The police search of the flash drive upon receipt from a private citizen is a far different situation from the search of a suspect's cell phone seized by police incident to the suspect's arrest. Accordingly, we find Manning's reliance on *Riley* to be misplaced.

of privacy was already frustrated by the private searches. Under *Jacobsen* and its progeny, the police action did not violate the Fourth Amendment. Accordingly, we affirm the district court's suppression ruling.

### B. Knowing Possession

Manning challenges the sufficiency of the evidence that he possessed the child pornography. We review sufficiency of the evidence claims for corrections of errors at law. *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013). When considering whether substantial evidence supports a conviction, we consider all evidence, not merely the evidence supporting the verdict. *State v. McFarland*, 598 N.W.2d 318, 320 (Iowa 1999). Viewing the evidence in the light most favorable to the State, we must decide if the evidence could convince a rational jury the defendant was guilty beyond a reasonable doubt. *State v. Ross*, 845 N.W.2d 692, 702 (Iowa 2014). "Direct and circumstantial evidence are equally probative." Iowa R. App. P. 6.904(3)(p).

To convict Manning under section 728.12(3), the State was required to prove two elements: (1) "On or about October 2012, the defendant knowingly possessed a visual depiction" and (2) "That visual depiction included a person under the age of 18 years engaging in a prohibited sexual act or the simulation of a prohibited sexual act." On appeal, Manning only challenges proof of the first element.

Manning points out that "during all relevant times" he was not in possession of his truck, his tools or the flash drive. The State counters that proof of actual possession is not necessary and its burden may be met by showing

constructive possession. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). Constructive possession is a judicial construct in which "possession of contraband [can] be inferred based on the location of the contraband and other circumstances." *Id.* at 443. (citing *State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010)).

How to prove constructive possession depends on the nature of the place where the evidence is discovered. When contraband is found in a place within the exclusive possession of the accused, possession may be inferred. *See State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013). But where more than one person has access to the place where the contraband is found, the State must offer additional proof tying the defendant to the contraband. *Id.* That additional proof may take several forms, for instance: (1) incriminating statements by the defendant; (2) incriminating actions upon police discovery of contraband among or near the defendant's belongings; (3) fingerprints on any packaging around the contraband; and (4) any other circumstances linking the person to the contraband. *Thomas*, 847 N.W.2d at 443.

In this case both the location and the contents of the flash drive pointed to Manning's constructive possession. Because Nieman had borrowed Manning's tools before, he knew where to find them. The bag containing Manning's tools was stored inside Manning's truck. According to Nieman, the drive was hidden in the lining of Manning's tool bag and it appeared to Nieman like "somebody had put it there specially." While the record contained testimony that other people may have had access to Manning's truck, a jury is "free to believe or disbelieve

any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

Even if the jury was not entitled to infer Manning had exclusive access to his truck and tool bag, the additional circumstances established that he possessed the images on the flash drive. The drive contained photographs Manning had taken of himself in his apartment. The drive also contained images of sketches drawn by the defendant. It also contained sexually explicit photographs Manning took of Corey when she was his girlfriend. Investigator Ryal testified all of the incriminating images on the drive had a time stamp of February 20, 2012 within a few minutes of 10 a.m., meaning it appeared as if all the images were downloaded to the folder at the same time.

Based on our review of the evidence in the record, we conclude the district court properly denied Manning's motion for judgment of acquittal because substantial evidence supports his knowing possession of the visual depictions of child pornography.

**AFFIRMED.**